WHITE, Appellant, vs. PERRY, Respondent.

*May 12—June 21, 1926.*

*Corporations: Sale of shares of stock: Right to current dividend: Construction of contract of sale: Fraud of seller: Evidence: Sufficiency.*

1. The provision in a contract of sale of corporate stock by one to another of the three stockholders of the corporation that the "dividend earned" by such shares during the current year shall be paid to the seller "as soon as declared," is construed, in view of the history of the company as to declaring dividends and the circumstances surrounding the parties when they entered into the contract, to contemplate the payment of a proportional part of the net earnings as soon as determined, which would be at the end of the year, and is not defeated by a scheme to avoid declaring the usual dividend by the use of earnings for additions to the plant. pp. 500, 501.

2. In construing a contract, effect must be given to every part thereof if the meaning can be reasonably ascertained. p. 501.

3. There being credible evidence before the jury from which it might find that the seller did not falsely and fraudulently fail to make a full disclosure of the assets of the corporation, the verdict cannot be disturbed on appeal. p. 502.

APPEAL from a judgment of the circuit court for Kewaunee county: HENRY GRAASS, Circuit Judge. *Reversed in part; affirmed in part.*

This is an appeal from a judgment in favor of the defendant dismissing the plaintiff's complaint on two causes of action, with costs.

The cause was submitted for the appellant on the brief of *Martin, Martin, Martin, Clifford & McHale* of Green Bay, attorneys, and *Thomas H. Gill* of Milwaukee, of counsel, and for the respondent on that of *Bruemmer & Bruem-*

*mer* of Kewaunee, attorneys, and *James H. McGillan* of Green Bay, of counsel.

CROWNHART, J.  The first cause of action is for money due on contract, and the sole question raised here is the interpretation of the contract.

Considerable testimony was taken as to the facts and circumstances surrounding the making of the contract, for the purpose of putting the court in the position of the parties in order that it might be better able to determine the meaning of the contract.

It appeared that *White, Perry,* and one Haney, since the year 1906, owned all the stock of the Algoma Panel Company, a corporation, and its predecessor in name, until the sale of *White's* stock to *Perry,* Haney owning one half and *Perry* and *White* each owning one quarter of the stock.

*White* and *Perry* had been close and confidential friends during all the time they were interested in the corporation. The three stockholders—*Perry, White,* and Haney—were the officers of the company.  They did not hold formal meetings, either as the board of directors or stockholders, but met frequently and generally discussed the affairs of the company and voted dividends and transacted other matters. In 1907 the stock was $100,000, upon which a dividend of one per cent. was voted.  No dividend was voted in 1908; in 1909, 30 per cent.; 1910, 40 per cent.; 1911, 32 per cent.; 1912, none; 1913, 40 per cent.; 1914, 40 per cent.; 1915, 20 per cent.; 1916, 40 per cent.; 1917, 60 per cent. dividends were voted.  In 1918 the stock was increased to $500,000, but no additional capital was invested, each stockholder receiving four shares in addition to his original holdings.  That year a dividend of 12 per cent. was voted on the $500,000 capital stock; in 1919, 12 per cent.; 1920, 15 per cent.; 1921, 14 per cent.; and in 1922, 4 per cent. dividends were paid.

The son of *Mr. Perry* became interested in the plant

about 1922, and friction developed over the policies of the company between *White* and the son. In August, 1922, *White* and the defendant *Perry* met at Algoma, at which time a contract was entered into by which *White* sold his stock to *Perry*.

*White* testified that *Perry* suggested that one should buy out the stock of the other, and that he offered *White* $150,000 for his stock. *White* then asked about the money on hand available for dividends, and *Perry* went to the vault and got certificates of deposit in the bank and counted them out, showing the amount of available cash on hand to be $52,500. *White* then added that there was at the Birchwood plant a $10,000 certificate of deposit and $6,000 in cash, and that he (*White*) owed the company $5,200. *White* demanded, in addition to the $150,000 for the stock, the dividend available for 1922, and *Perry* agreed that he should have it. *White* then said, "Well, under those circumstances I will sell," and *Perry* replied, "All right." *Perry* drew up the contract in lead-pencil and handed it to a typist to be copied. The typewritten contract was then signed by both parties.

*Perry* was examined under sec. 4096, Stats., before the trial. At that time his recollection of the conversation was more or less hazy. He did not specifically deny the statements of *White,* but on the trial his testimony was more positive, and he denied the conversation with reference to the amount of money on hand available for dividends, and denied the procuring and counting of the certificates of deposit in the bank. This is not very material, as it is clear that there was then some $52,500 in the custody of *Perry* available for dividends.

The contract reads as follows:

"*P. M. White* agrees to sell *M. W. Perry* 1,250 shares of the capital stock of the Algoma Panel Company, represented by certificate No. 14, and hereby relinquishes all claim and title to any and all of the property owned and in

control of the above mentioned corporation for the sum of one hundred and fifty thousand dollars, to be paid as follows:" [Here are inserted terms of payment.]

Then the following:

"It is further agreed that the dividend earned by the 1,250 shares of stock for the year 1922 above transferred, shall be paid to the said *P. M. White* as soon as declared. The said *P. M. White* is to hold the certificate designated as certificate No. 14 as collateral until all the above mentioned indebtedness shall have been paid."

The contract was entered into on the 10th of August, 1922. According to the usual course of business, for many years dividends were declared about the 1st of January on the earnings of the preceding year. The net earnings of the corporation for the year 1922, available for dividends, were about $94,000, and the stocks conveyed under the contract amounted to one fourth of the total stock of the corporation, and hence the dividends earned and available to the stock conveyed were something over $24,000.

It is the contention of the plaintiff that the language—"It is further agreed that the dividend earned by the 1,250 shares of stock for the year 1922 above transferred, shall be paid to the said *P. M. White* as soon as declared"—in effect means that the net earnings available for dividend should be paid as soon as the same were determined.

It is the contention of the defendant that the language so used is to be literally construed to mean the dividend actually declared. The issues as to the first cause of action were tried by the court, and the court made findings of fact favorable to the defendant's contention.

Coming now to the interpretation of the language of the contract, we have the significant expression "dividend earned" by the 1,250 shares of stock for the year 1922. This expression, standing by itself, certainly would not ordinarily be construed as meaning "dividend declared." If

we take the history of the company in declaring dividends and the circumstances surrounding the parties when they entered into the contract, it seems more reasonable to think that the agreement contemplated that *Perry* would pay the earned dividends as soon as they were determined, which would be at the end of the year; otherwise no dividends whatever might be declared and hence *White* might be denied anything on account of the earnings of his stock in the year 1922. This would make the language of the contract with reference to the dividends earned absolutely abortive and of no effect. In construing the contract we must give effect to every part thereof if the meaning can be reasonably ascertained. It is significant that the son of the defendant *Perry* had become an active factor in the management and direction of the affairs of the company and that he was hostile to the interests of *White*. While *White* trusted with absolute confidence the elder *Perry,* he had no reason to place such confidence in the younger man. It appears from the evidence that in order to avoid declaring the usual dividend, the younger *Perry,* who had succeeded *White* as a director in the company, prepared a budget whereby he proposed to use the greater part of the funds earned and available for dividends, for improvements and additions to the plant, and his budget was adopted by the stockholders at the annual meeting. The evidence and circumstances convince us that the stockholders at the annual meeting sought to deprive *White* of the benefits of his contract. We think the contract is to be construed as an agreement on the part of *Perry* to pay to *White* the proportional net earnings in the year 1922 on the stock transferred by *White* to *Perry,* and *Perry* should be held liable accordingly. Of course it made a difference to *Perry,* so far as the value of the stock he purchased from *White* was concerned, whether dividends were declared or not. If dividends were declared on the stock they belonged to *White;* if not, *Perry*

had the proportional earnings of the company in the assets of the corporation.

The second cause of action is based upon the charge of fraudulent suppression of facts by *Perry* with reference to the assets of the corporation at the time the contract was made.

It appears that *Perry* owed the corporation at that time $18,000, and Haney owed the company $18,363. *White* was ignorant of these assets, and claims to have been misled in fixing the value of his stock by reason thereof. However, this question was submitted to the jury, as follows:

"Did the defendant falsely and fraudulently fail to make a full and fair disclosure to the plaintiff of any facts within his knowledge which materially affected the value of the stock in the Algoma Panel Company? *A*. No."

We think the verdict of the jury is based upon credible evidence. It is true that *Perry* did not disclose these assets of the corporation, but it is also true that *White* did not make any investigation as to the assets except as to the amount of earnings available for dividends. Fraud must be clearly shown, and we cannot say that under the circumstances the facts were fraudulently suppressed. It would seem that good faith and fair dealing on the part of *Perry* would require a disclosure of these assets which would materially enhance the value of the stock which he was purchasing. Nevertheless, there being credible evidence before the jury from which it might find otherwise, we cannot disturb the verdict.

*By the Court.*—The judgment is reversed on the first cause of action, and remanded to the circuit court to ascertain the net earnings of the corporation for the year 1922, and to grant plaintiff judgment for one fourth of that amount. The judgment of the circuit court is affirmed on the second cause of action.